Troy P. Foster #017229
Megan Weides #033552
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona  85007
Tel: 602-461-7990
tfoster@thefosterlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer Pope, an individual, | Case No.: 2:20-CV-00857-MTL |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT**<br>**(Jury Trial Demanded)** |
| Central Arizona Water Conservation District, an Arizona government entity d/b/a the Central Arizona Project, | |
| Defendant. | |

For her Complaint against Central Arizona Water Conservation District ("CAWCD") d/b/athe Central Arizona Project ("CAP") ("Defendant"), Plaintiff Jennifer Pope ("Ms. Pope" or "Plaintiff"), alleges in this First Amended Complaint, as follows:

### Background Allegations and Jurisdiction

1. At all times relevant to this Complaint, Ms. Pope resided in Maricopa County, Arizona, and is a citizen of the State of Arizona.

2. CAWCD is a multi-county water conservation district created pursuant to A.R.S. 48-3701, *et seq.*

3. CAWCD is a jural entity, as outlined in its enabling statutes.

4. CAWCD governs and oversees the administration of CAP.

5.     CAWCD, d/b/a CAP, operates in Maricopa County, and throughout other counties in the State of Arizona.

6.     Defendant was  an employer as that term is defined in 42 U.S.C. § 2000.

7.     Ms. Pope is Defendant's employee as that term is defined in 42 U.S.C. § 2000e-f.

8.     Tim Salgado was in a supervisory role with CAP during all relevant times in the Complaint.

9.     CAP hired Ms. Pope as a heavy equipment operator starting in 2012.

10.    Jurisdiction and venue are appropriate in this Court.

**The Initial Warning:  "You Might Have Problems with the Guys"**

11.    In her role as a heavy equipment operator, Ms. Pope had specialized experience that made her uniquely qualified to perform tasks in this safety-sensitive role.

12.    Her hiring manager told Ms. Pope that she had extensive qualifications that made her more qualified than most of her counterparts.

13.    Ms. Pope was the only female in her role.

14.    Upon hire, her supervisor asked Ms. Pope to meet privately in his truck before beginning a shift.

15.    Ms. Pope's supervisor warned her that she might have problems with the male employees.

16.    Specifically, Ms. Pope's supervisor informed her that the male employees might not like working with her because of her gender and qualifications/experience.

17.    Prior to her employment with Defendant, Ms. Pope had worked in primarily male-dominated fields.

18.    As such, Ms. Pope believed that her work would speak for itself.

**Warning Turns into Reality**

19.    Ms. Pope's supervisor's warning became an immediate reality.

20.    At the outset, Ms. Pope worked with an all-male crew.

2

21.    The crew consisted of Ms. Pope, the heavy equipment operator, and several maintenance operators.

22.    Typically, when the crew reached a site, the crew would gather to coordinate the day's work and discuss safety issues.

23.    Given her role, Ms. Pope was to lead the brief daily meetings.

24.    When Ms. Pope would arrive and begin the meeting, the rest of the crew would ignore Ms. Pope and leave.

25.    In addition, the male crew members engaged in daily harassment against Ms. Pope because of her gender.

26.    By way of example only, the male crew members would purposely lock Ms. Pope out of certain gates along the canals.

27.    The male crew members would put grease on gate handles right before Ms. Pope arrived.

28.    The male crew members would not assist Ms. Pope with work, as they would any other male team member, which created safety issues.

29.    The male crew members would not relieve Ms. Pope so that she could go to the bathroom.

30.    Rather, male crew members made inappropriate and gender-based comments, telling her to "go in a bush" and laughed.

31.    Male crew members made other inappropriate and gender-based comments.

32.    In addition, some male crew members falsified work orders, suggesting that they completed work that Ms. Pope had completed.

33.    This falsification facilitated those male employees being paid for not working, but claiming to have completed work that Ms. Pope had, in fact, completed.

34.    From her first day of employment in 2012 until date of filing this Complaint, Ms. Pope has been subjected to gender discrimination and a hostile work environment because of her gender on a daily basis.

35.     The discriminatory behavior throughout her employment was of the same nature and type, and based upon her gender.

36.     Ms. Pope suffered gender discrimination and a hostile work environment based on acts within the 300-day period prior to her Charge.

37.     Ms. Pope suffered related gender discrimination and a hostile work environment from acts prior to the 300-day period prior to her Charge.

38.     As outlined throughout, the timely and untimely acts constitute a continuing violation.

39.     Moreover, Ms. Pope relied on Employer Defendants' promises to investigate and remediate prior to filing her formal Charge.

**<u>Reporting Led to Repeated Retaliation</u>**

40.     For the first several months of her employment, Ms. Pope endured the discrimination and harassment without making any report.

41.     Ms. Pope hoped that her hard work and time with the crew would halt the discrimination.

42.     When the harassment and discrimination continued, Ms. Pope complained to her supervisor, Tim Salgado.

43.     Mr. Salgado literally laughed at Ms. Pope's complaints.

44.     Mr. Salgado further told Ms. Pope "you will just have to deal with it [the harassment and discrimination]."

45.     In addition to complaints about the gender discrimination and harassment, Ms. Pope complained that her co-workers were filing false and fraudulent reports.

46.     These reports, Ms. Pope reported that she believed, negatively impacted the taxpayers and constituted fraud, as prohibited by Arizona criminal statute.

47.     Moreover, Ms. Pope's reports of fraud were raised as a private citizen and were not within the scope of her employment.  Nor were they raised as personal grievances, but rather, as matters of public concern.

48.     Immediately after her initial report of harassment, discrimination, and fraud, waste, and abuse, Ms. Pope was disciplined.

49.     Mr. Salgado told Ms. Pope that unidentified "people" called her rude.

50.     Mr. Salgado provided no additional information.

51.     Upon information and belief, no one complained about Ms. Pope – other than about her gender.

52.     As a result of the pretextual discipline, Ms. Pope was denied a pay increase and her annual safety bonus.

53.     This denial continued to negatively impact Ms. Pope from the initial report up to and including the date of filing her judicial Complaint.

54.     Despite being literally laughed at and disciplined, Ms. Pope has made complaints of harassment, discrimination, and fraud, waste, and abuse throughout her employment.

55.     With each complaint, Ms. Pope has been dismissed, retaliated against, and suffered direct economic harm.

56.     When making one such complaint, Mr. Salgado physically assaulted Ms. Pope after locking an office door, by grabbing her, and shoving her up against a wall while he yelled at her for complaining.

**Complaints to Human Resources Fall on Deaf Ears**

57.     Ms. Pope raised her complaints of discrimination, harassment, and retaliation to CAP's Human Resources Department.

58.     CAP Human Resources representatives informed Ms. Pope that there was nothing that could be done to stop the unlawful behavior.

59.     Ms. Pope has made repeated reports to CAP's Human Resources officials about the harassment, discrimination, and retaliation throughout her entire period of employment.

60.     CAP Human Resources representatives have consistently informed Ms. Pope that nothing could be done or she could find another job.

**Demotion as the Solution**

61.     Ms. Pope did not find another job, as her supervisors and Human Resources suggested.

62.     Rather, she kept working; kept enduring the gender-based harassment, discrimination, and retaliation; and continued to complain.

63.     At one point, Defendant hired an outside consultant to conduct an investigation.

64.     Ms. Pope was placed on paid leave for almost three months.

65.     Based upon the Defendant's representations, Ms. Pope reasonably believed that her complaints would be appropriately investigated.

66.     At the conclusion of the investigation, upon information and belief, CAP discovered inappropriate and gender-based discrimination and harassment.

67.     CAP offered Ms. Pope monetary compensation if she agreed to resign.

68.     Ms. Pope could not find a replacement job and declined CAP's invitation.

69.     While on leave, CAP informed Ms. Pope that it could not change the work environment nor prevent the harassment, discrimination, or retaliation.

70.     As such, CAP demoted Ms. Pope from her heavy maintenance operator position to a maintenance position in or around 2016.

71.     In her new role, Ms. Pope is charged with scrubbing toilets and other janitorial duties.

72.     Ms. Pope was transferred to a remote site away from the all-male crew and her supervisor, Mr. Salgado (temporarily).

73.     The new site is one of the pumping stations, which is underground, remote, sparsely inhabited, and somewhat dark.

74.     Notably, after Ms. Pope's 2019 complaints, Defendant moved Mr. Salgado to Ms. Pope's remote work station in retaliation for her complaints of gender discrimination and raising matters of public concern.

**The Change in Site Does Not Change the Discrimination**

75.     When Ms. Pope returned to work, male employees continued to treat her differently.

76.     By way of example only, male employees flipped off, avoided, and isolated Ms. Pope.

77.     In addition, Ms. Pope was told that no one wanted to work with her because she made complaints about gender discrimination, harassment, and matters of public concern.

78.     Further, in 2019, Employer Defendants moved Mr. Salgado to the remote site where Ms. Pope had been transferred.

79.     Ms. Pope expressed her concern for her physical safety, given Mr. Salgado's violent and discriminatory animus toward her.

80.     Defendants' Human Resources representatives told Ms. Pope that there was nothing that they could do about her concerns.

81.     Mr. Salgado continues to harass Ms. Pope.

## Allegations Concerning Damages and Exhaustion

82.     Ms. Pope was in good health prior to the unlawful activity outlined above.

83.     As a result of Defendants' conduct, Ms. Pope has experienced severe emotional distress, anxiety, Post Traumatic Stress Syndrome, and other ailments.

84.     Notably, Ms. Pope has experienced physical manifestations and hospitalizations for these ailments.

85.     Ms. Pope's personal relationships have suffered, as a result of Defendants' conduct.

86.     As a result, Ms. Pope has been forced to utilize sick and personal days to attend to these illnesses.

87.     Ms. Pope filed her Charge of Discrimination on November 19, 2019.  *See* Charge No. 540-2019-02066, attached as Exhibit 1.

88.     The EEOC issued Ms. Pope her Right to Sue on December 6, 2019.  *See* Right to Sue, attached as Exhibit 2.

89.     Ms. Pope received Exhibit 2 on or about December 8, 2019.

90.     Ms. Pope has timely filed this Complaint and exhausted her administrative remedies.

**LEGAL CLAIMS**

**Count One:  Gender Discrimination (Title VII) (Against Employer Defendants)**

91.     Ms. Pope reincorporates allegations in paragraphs 1-90 as if fully set forth here.

92.     Ms. Pope is a woman and worked with an all-male crew.

93.     Ms. Pope was qualified to perform the duties for which she was hired.

94.     Defendants treated Ms. Pope differently because of her gender.

95.     Ms. Pope suffered several adverse actions because of her gender, including demotion, reassignment, loss of pay, loss of promotional opportunities, disciplinary action, negative performance reviews, and isolation to name a few.

96.     Ms. Pope was damaged as a result.

97.     Ms. Pope suffered loss of wages, general and compensatory damages, in the form of emotional distress, as a result of the harassment.

98.     Defendant is  strictly liable for the gender discrimination and Ms. Pope's damages.

**Count Two:  Harassment/Hostile Work Environment (Title VII)**

99.     Ms. Pope reincorporates allegations in paragraphs 1-98 as if fully set forth here.

100.    Ms. Pope was subjected to disparate treatment based on her gender on a daily basis.

101.    The harassment came in various forms, including verbal and physical gender-based harassment.

102.    The harassment was (and remains) sufficiently severe and/or pervasive so as to alter Ms. Pope's work conditions.

103.    All of the conduct was unwelcome.

104.    The harassment was continuous, beginning from 2012 until present.

105.    Ms. Pope was offended by the harassment in the workplace.

106.    Any reasonable woman would be offended by the harassment.

107.    Ms. Pope suffered, and continues to suffer, damages as a result of the hostile work environment.

108.    Defendant is  strictly liable for the hostile work environment and Ms. Pope's resulting damages.

### Count Three:  Retaliation (Title VII)

109.    Ms. Pope reincorporates allegations in paragraphs 1-108 as if fully set forth here.

110.    Ms. Pope engaged in protected activity each and every time she complained about the gender discrimination and harassment.

111.    Ms. Pope suffered adverse action through her write ups, demotion, loss of pay, negative performance appraisals, and significant change in work conditions, among other things.

112.    These adverse actions were taken as a result of Ms. Pope's complaints and her Charge of Discrimination.

113.    After filing her Charge, Ms. Pope's working conditions worsened and gender-based harassment continued.

114.    Defendant is  liable for the retaliation and Ms. Pope's resulting damages.

115.

### Conclusion

THEREFORE, Ms. Pope respectfully requests the following relief:

A.  An award of lost wages, and general and compensatory damages for the Employer Defendants' the Company's violations and her damages pursuant to Title VII;

B.  An award of attorneys' fees and costs based upon the applicable provisions of Title VII a; and

C.  All other appropriate equitable relief.

1

**DATED** this 9th day of June , 2020.

2

3                                        **The Foster Group, PLLC**

4

5                                        */s/ Troy P. Foster*

6                                        _____
                                         Troy P. Foster
7                                        Megan Weides
                                         902 W. McDowell Road
8                                        Phoenix, Arizona 85007
                                         *Counsel for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25